USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

        - against -

JOSE RIVERA,

              Defendant.

------------------------------------------X

04 Cr. 959-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On September 1, 2005, defendant Jose Rivera ("Rivera") pled guilty to one count of conspiring in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), a Class C felony. For the reasons set forth below, Rivera will be sentenced to a term of imprisonment of 60 months, to be followed by a three-year term of supervised release. Rivera will also be required to pay a mandatory special assessment of $100.

**Prior Proceedings**

Rivera was arrested on August 12, 2004. An indictment was filed in the Southern District of New York on September 7, 2004, charging that on or about October 24, 2003: (1) Rivera, his co-defendant, and others conspired to distribute and possess with intent to distribute heroin; and (2) Rivera and his co-defendant

distributed and possessed with intent to distribute four grams of heroin. Rivera has been detained without bail since his arrest.

On September 1, 2005, Rivera appeared before the Honorable Michael H. Dolinger of the Southern District of New York and pled guilty to the offense charged in the first count of the indictment. Rivera's guilty plea was accepted by this Court on September 29, 2005, and he is scheduled to be sentenced on November 30, 2006.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2

Case 1:04-cr-00959-RWS   Document 23   Filed 11/29/06   Page 3 of 19

- (B) to afford adequate deterrence to criminal conduct;

- (C) to protect the public from further crimes of the defendant; and

- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

## The Defendant

The following description draws on the Pre-Sentence Investigation Report prepared by the Probation Office of the United States District Court for the Southern District of New York and

3

dated May 17, 2006 ("the PSI").    Additional facts regarding Rivera's history and characteristics are adopted as set forth in that report.

Jose Luis Rivera was born in Fajaldo, Puerto Rico, in 1968.    Rivera moved to the United States with his mother when he was approximately five years of age.  He reportedly knows nothing about his father and has never had a surrogate father figure in his life.

Rivera has reportedly suffered several major injuries. At a very young age, he reportedly fell from a second floor terrace and injured his head, the treatment for which included the placement of a metal plate in his head.    In addition, in 1993, Rivera was reportedly the victim of a drive-by shooting.    Rivera sustained nine gun shot wounds to his neck, head, arms, hands, and back.

Rivera has been involved in a committed, consensual relationship for several years.    He and his partner have a daughter, born in December 1999, who reportedly is asthmatic and has a heart murmur.  Rivera's partner also has an eleven-year-old daughter from a prior relationship.

Rivera's long and unfortunate history of drug dependency began when he was a teenager.    It was due to his drug use and

4

related criminal activity that Rivera did not graduate from high school, having dropped out in the ninth grade. He has reportedly received substance abuse treatment on several occasions. During his most recent incarceration, Rivera satisfactorily completed the requirements for positive life-style and was awarded a certificate of achievement by the Federal Bureau of Prisons in September 2005.

From approximately 1999 up until the time of his incarceration, Rivera had reportedly been periodically employed doing building maintenance and construction work.

## The Offense Conduct

The following description draws on the PSI. The specific facts of the underlying conduct are adopted as set forth in that report.

On or about October 24, 2003, an undercover police officer ("UC") met with Rivera and his co-defendant for the purpose of purchasing drugs from them. The UC indicated that he wanted to purchase "ten bundles of heroin." (PSI ¶ 9.) Rivera left the building and later returned to give his co-defendant a clear plastic bag containing numerous glassines that each contained a white powdery substance. The co-defendant in turn gave the bag to the UC, in addition to another bag that the co-defendant had obtained from elsewhere in the building. In exchange, the UC gave

5

Rivera's co-defendant approximately $900. The substance given to the UC was later tested and found to be heroin with a weight of approximately four grams.

According to the Government, for the time of the narcotics conspiracy, Rivera and his co-defendant are responsible for the distribution and possession with intent to distribute between twenty and forty grams of heroin because of additional sales.

## The Relevant Statutory Provisions

The maximum term of imprisonment is twenty years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. In addition, a term of at least three years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846.

Rivera is eligible for not less than one nor more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, pursuant to 18 U.S.C. § 3563(a)(2), one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

6

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $1,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the court.

## The Guidelines

The November 1, 2006, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(a).

7

## 1. Offense Level

The Guideline for violations of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1. Based on the offense conduct, Rivera is responsible for conspiring to distribute and possess with the intent to distribute between twenty and forty grams of heroin. According to U.S.S.G. § 2D1.1(a)(3) and (c)(11), this amount of heroin results in a base offense level of 18.

However, Rivera is designated a "career offender" pursuant to U.S.S.G. § 4B1.1(a) because: (1) the instant offense involves a narcotics conspiracy; (2) Rivera was eighteen years or older at the time of its commission; and (3) Rivera has two prior felony convictions for controlled substance offenses. As a result, his base offense level is increased to 32 pursuant to U.S.S.G. § 4B1.1(b)(C).

Based on the PSI, Rivera has shown recognition of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels. Further, because Rivera's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level, pursuant to U.S.S.G. § 3E1.1(b).

8

Thus, Rivera's adjusted offense level under the Guidelines is 29.

## 2. Criminal History

Rivera has eight prior, non-federal criminal convictions which result in a total of ten criminal history points.

On May 11, 1985, Rivera was arrested for disorderly conduct. He pled guilty on June 4, 2005, and paid a fine of $100. Pursuant to U.S.S.G. § 4A1.2(c) and (e), Rivera does not receive any criminal history points for this prior conviction.

On February 14, 1987, Rivera was arrested for attempted robbery in the third degree. He pled guilty on June 8, 1987, and received a sentence of 18 to 54 months' imprisonment. Rivera was incarcerated for this prior offense on August 12, 1987, and released on parole on August 10, 1988. His parole supervision was revoked, however, on December 15, 1989. The expiration date of Rivera's parole supervision for this offense was August 10, 1991. Pursuant to U.S.S.G. §§ 4A1.1(a), 4A1.2(e)(1), and 4A1.2(k)(2)(B), three criminal history points are added for this prior conviction.

Rivera was arrested for criminal sale of a controlled substance in the fifth degree on October 3, 1989. He pled guilty on November 1, 1989, and was sentenced to 30 to 60 months'

9

imprisonment.  Rivera was incarcerated on November 6, 1989, and parole supervision was commenced on February 3, 1993.  Pursuant to U.S.S.G. § 4A1.1(a), Rivera receives an additional three criminal history points for this prior conviction.

Rivera was again arrested on October 30, 1993, for disorderly conduct.  He pled guilty on October 31, 1993, and was conditionally discharged.  Rivera therefore receives no additional criminal history points for this prior conviction pursuant to U.S.S.G. § 4A1.2(c).

On September 7, 1996, Rivera was arrested for criminal sale of a controlled substance in the fifth degree.  He pled guilty on October 11, 1996, and was sentenced to two to four years' imprisonment.  Rivera was incarcerated on October 30, 1996, and his parole supervision commenced on May 6, 1999.  Therefore, pursuant to U.S.S.G. § 4A1.1(a), Rivera receives an additional three criminal history points for this prior conviction.

Rivera was arrested again on July 26, 2001, for criminal possession of a controlled substance in the seventh degree.  He pled guilty to the charge on September 13, 2001, and was sentenced to time served.  Rivera therefore receives one additional criminal history point pursuant to U.S.S.G. § 4A1.1(c).

10

Finally, Rivera was arrested on May 28, 2002, and again on September 14, 2002, for criminal trespass in the second degree. He pled guilty to both charges and received sentences of three days in jail and time served, respectively.   Pursuant to U.S.S.G. § 4A1.2(c), Rivera receives no additional criminal history points for either of these prior criminal convictions.

Thus, pursuant to the Sentencing Table, with a total of ten criminal history points, Rivera has a Criminal History Category of V.

However, due to Rivera's designation as a "career offender" pursuant to U.S.S.G. § 4B1.1(a), his Criminal History Category is elevated to VI pursuant to U.S.S.G. § 4B1.1(b).

### 3.  Recommended Sentence Under the Guidelines

Based on a total adjusted offense level of 29 and a Criminal History Category of VI, the Guidelines range for imprisonment is 151 to 188 months.

The Guidelines range for a term of supervised release is a minimum of three years, as required by statute, pursuant to U.S.S.G. § 5D1.2(c).

11

Because the applicable Guidelines range is in Zone D of the Sentencing Table, Rivera is not eligible for probation, pursuant to U.S.S.G. §§ 5B1.1, application note 2.

The Guidelines fine range for the instant offense is from $15,000 to $1,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3)(A) and (c)(4). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

## 4. The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the

12

penalty "provide just punishment for the offense" that simulta-
neously "afford[s] adequate deterrence to criminal conduct" as
required by § 3553(a)(2)(B). Furthermore, pursuant to §
3553(a)(6), the Court is also mindful of "the need to avoid
unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct."

Having considered all the factors set forth in § 3553(a),
it is determined that a sentence below the applicable Guidelines
range is warranted in the instant case. Here, the sentence
resulting from Rivera's designation as a career offender is
"greater than necessary" to achieve the purposes of 18 U.S.C. §
3553(a)(2).

Despite having several prior convictions, it appears that
Rivera has not spent more than approximately 39 consecutive months
in prison prior to the instant offense. Yet pursuant to his
"career offender" status under the Guidelines, Rivera now faces a
minimum sentence of more than twelve-and-a-half years of imprison-
ment. The disparity between the sentences imposed for his earlier
convictions and the sentence dictated here by the career offender
categorization is significant.

Furthermore, when considering the advisory Guidelines
range, the Court also considers what Rivera's Guidelines range
would have been without his career offender designation.    See

13

United States v. Blackmond, No. 04 Cr. 424-06(RWS), 2006 WL 1676288, at *6 (S.D.N.Y. June 14, 2006). The Criminal History Category that would have applied were it not for the career offender designation is V, and the adjusted offense level that would have applied but for Rivera's career offender status is 15. The resulting sentencing range would have been 37 to 46 months, a substantially lesser sentence than his current Guidelines sentencing range of 151 to 188 months.

The goal of the career offender classification is to achieve a deterrent effect and to address adequately the concerns regarding recidivism that are reflected in that classification scheme. As the Second Circuit noted in    United States v. Mishoe:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses.

241 F.3d 214, 220 (2d Cir. 2001). As Rivera's prior imprisonment has not exceeded approximately 39 months at any one time, any term of imprisonment significantly greater than this amount will achieve the deterrent effect underlying the career offender designation. See Blackmond, 2006 WL 1676288, at *6.

14

Therefore, balancing the need for meaningful deterrence with the statutory demand to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes " of sentencing, 18 U.S.C. § 3553(a), it is determined that a non-Guidelines sentence is warranted.    See Blackmond, 2006 WL 1676288, at *6 (disregarding career offender classification and imposing non-Guidelines sentence where mandatory minimum was still fifteen times greater than time served by defendant on all prior convictions combined); United States v. Carvajal, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "But [the Career Offender Guidelines] are excessive, in light of the nature of [defendant's] recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria. A sentence that satisfies only the Guidelines would be 'greater than necessary, to comply with the purposes' set forth in the statute."); United States v. Phelps, 2005 WL 984156, at *6 (E.D. Tenn. April 1, 2005) (noting, "[i]t is not unusual that the technical definitions of `crime of violence' and `controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary, increases in their advisory Guidelines ranges. In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of

15

sentencing set out in § 3553(a)(2).")

Finally, mindful of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," pursuant to 18 U.S.C. § 3553(a)(6), a non-Guidelines sentence similar to that imposed on Rivera's co-defendant is appropriate.    See United States v. Fernandez, 443 F.3d 19, 31-32 & n.9 (2d Cir. 2006) (assuming arguendo, without resolving, that § 3553(a)(6) could support a sentence designed to eliminate or diminish disparity between sentences imposed on similarly situated co-defendants).[1] Rivera and his co-defendant are similarly situated in that they were engaged in similar conduct, have a similar criminal history, and both suffer from drug abuse problems.  Rivera's co-defendant was sentenced to time served, or approximately 22

---

[1] Since Booker, a growing number of courts have "held that sentencing judges are 'no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence.'"  Ferrara v. United States, 372 F. Supp. 2d 108 (D. Mass. 2005) (quoting United States v. Hensley, No. 2:04 CR 10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, 408 F.3d 966 (7th Cir. 2005); Simon v. United States, 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005). It should be noted, however, that in an unpublished summary order that was entered after Booker and Crosby were announced, the Second Circuit reaffirmed the construction of § 3553(a)(6) announced in United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991) (stating that "[t]o reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country").  See United States v. Toohey, No. 04-4565, 2005 WL 1220361, at *2 (2d Cir. May 23, 2005).

16

months' imprisonment, after pleading guilty to both counts in the indictment. <u>United States v. Rivera</u>, No. 04 Cr. 959(RWS), 2006 WL 1596814, at \*1 (S.D.N.Y. June 9, 2006).

## **The Sentence**

For the instant offense, Rivera is hereby sentenced to a term of imprisonment of 60 months, to be followed by a three-year term of supervised release.   In addition, Rivera is to pay a mandatory special assessment of \$100, which shall be due immediately.

In that Rivera has been detained without bail, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

The Court recommends that the Bureau of Prisons make available to the defendant all drug programming for which he is eligible.

Rivera is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release.    It is recommended that Rivera be supervised by the district of his residence.

17

As mandatory conditions of his supervised release, Rivera shall: (1) not commit another federal, state or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.  The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Rivera will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.  Rivera shall be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) Rivera shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a search may be grounds for revocation.  Rivera shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the defendant is able to pay a fine, and the fine in this case shall therefore be waived.

18

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for November 30, 2006.

It is so ordered.

**New York, NY**

October   , 2006

November 29

**ROBERT W. SWEET**

**U.S.D.J.**

19